BAILES, Judge.
Defendants appeal from judgment rendered against them in this action wherein plaintiff seeks recovery of damages allegedly sustained through the negligence of the driver of the vehicle owned by Mrs. Mary Ann Lovecchio, one of the defendants herein.
The accident which gave rise to this suit occurred on March 18, 1966, in the City of New Orleans at the intersection of Bien-ville and North Genois Streets between a motorcycle driven by plaintiff and an automobile driven by Ann Lovecchio, daughter then sixteen years of age of Frank Lovec-chio. In addition to Mr. Frank Lovecchio and his insurer, United States Fidelity and Guaranty Company, Mrs. Mary Ann Lov-ecchio, (grandmother of Miss Ann Lovec-chio), and her insurer, Aetna Insurance Company, were made defendants.
Judgment was rendered by the trial court in favor of' plaintiff in the amount of $2,840.51 for special damages, and $4,500.00 for physical pain and suffering and residual disability, making a' total award of $7,340.51, together with legal interest from date of judicial demand until paid and for all costs.
Plaintiff has answered the appeal urging this court to increase the special damages award to $4,825.80, the general damages award to $5,500.00 and the fee of the medical witness increased from $100.00 to $125.00.
Our examination and appreciation of the facts and the law appertaining persuades us that the judgment is correct on the question of liability. However, we find the judgment must be amended in quantum.-
The accident' occurred when Miss Ann Lovecchio drove her automobile into the intersection of Bienville Street at North Genois Street and stopped to allow traffic travelling in the direction of the river to clear the intersection in order to proceed uptown. At this time plaintiff was proceeding towards the lake in the left lane of Bienville Street. When Miss Lovecchio stopped in the downtown side of Bienville Street she blocked the plaintiff’s lane of travel which caused plaintiff to strike the rear left side of her automobile causing the damage which is the subject of this suit.
This finding of fact is contrary to the contention of Miss Lovecchio,
She contends that her car was' parked on Bienville Street headed in the direction of the lake; that she checked traffic to the rear, saw none; then proceeded to pull away from the curb across the right lane into the left lane and into the intersection where she stopped to allow riverbound traffic..(the. opposite direction from her initial direction of travel) to clear the intersection before making a left turn into North Genois Street.-
She claims she didn’t see the plaintiff on his motorcycle until immediately prior to the collision. She testified she saw him just before he struck her car.
The two young ladies, sister and cousin of the driver, corroborated in every respect the driver’s version of how the accident occurred including the place where the car had been parked.
The driver and the two passengers, although sequestered, all testified, that the Lovecchio, vehicle had been in the intersection fpr .fifteen to twenty- seconds waiting for traffic to clear the intersection prior to the plaintiff colliding with their car.
More importantly, Officer Boudreaux who investigated the accident gave this testimony :
“BY MR. FONTANA:
“Q Officer Boudreaux, did not obtain a statement from a young lady, Miss *351 Ann May Lovecchio, the driver of the automobile?
“A Yes, sir, I did. At the time of my investigation the young lady stated she had stopped for the stop sign on N. Genois, saw no one approaching, then proceeded into the intersection at which time she saw the motorcycle or vehicle No. 1 approaching. She tried to get out of the way of vehicle No. 1 and was unable to do so and the motorcycle struck the left rear of her automobile.
“THE COURT:
“Were there any skid marks from the motorcycle ?
“THE WITNESS:
“Yes, sir, the motorcycle had thirty feet of skid marks.
“BY MR. FONTANA:
“Q As an investigator for the Accident Investigation Division of the New Orleans Police Department are you able to determine the speed of the motorcycle from the skid marks ?
“A Using the Northwestern Traffic Institute schedule, yes. It would come to eighteen to twenty miles per hour at the time he hit his brakes.”
Plaintiff testified he saw the defendant’s vehicle the first time when he was only about twenty-five feet away, and that it was impossible for him to avoid striking the car. Obviously, as he left 30 feet of-skid marks, he was farther from the defendant’s vehicle than he thought, however, his testimony does emphasize the nearness of plaintiff to the Lovecchio vehicle when it stopped in his path. We find he could not have avoided the collision.
We find the accident was caused solely and proximately by the negligence of the driver of the Lovecchio vehicle pulling from the stop sign on North Genois Street into the intersection and stopping in and blocking the plaintiff’s lane of traffic at a time when lawfully occupied by plaintiff.
Defendants argue the application of the doctrine of last clear chance. Under the finding of facts above set forth, the doctrine of last clear chance is not applicable. Although the driver drove into the intersection and into a position of peril, the plaintiff was not in a position to have avoided striking the Lovecchio vehicle.
Immediately after the accident, plaintiff was taken by a friend to Oschner Clinic for emergency treatment. He was seen and treated by a staff orthopedist who diagnosed his injury as a transverse fracture of the mid portion of the navicular bone of the right wrist which, according to the treating physician, is a type of fracture notoriously slow to heal. He was under treatment by the treating physician from date of injury until May 8, 1967, excluding the time he was in the U. S. Army from January 4, 1967 to April 28, 1967. Between March 18, 1966 and November 28, 1966, five separate casts were applied, necessitated by plaintiff’s work. Healing was not noted until August 29, 1966 and on November 28, 1966, increased healing was found. The physician testified that he advised plaintiff on July 21, 1966, to go on lighter work because of lack of bone healing. The bill for medical treatment amounted to $260.00 and the emergency treatment was $87.50. The repairs to the motorcycle amounted to $493.01.
The plaintiff was a body repairman in the employ of Fact-O-Bake in New Orleans, earning $130.00 per week. The day following the accident, plaintiff returned to work, although unable to do the work previously performed. He worked for three weeks with a loss, through reduction in pay, of $173.00. By reason of not being able to work as before the accident, he was terminated by Fact-O-Bake and was out of work for three weeks. He obtained employment with Metairie Ford and worked from May 2, to July 19. At this time the treating physician required him to stop *352 working because the fractured bone was not healing. For accident related reasons, plaintiff was out of work from July 19 to September 20 at which time he obtained different type employment not requiring use of his wrist, at a reduction in pay to about $80.00 per week, or a loss by reduction in pay of $50.00 per week for sixteen weeks, or to. the date of his induction into the army on January 4, 1967.
From our computation of medical expenses, we find the treating physician’s bill was $260.00 and the emergency treatment at Oschner’s Clinic amounted to $87.-50, bringing the total medical expense to $347.50. The trial judge allowed the sum of $2,000.00 for “loss and reduction in wages of trade,” however we find the loss of wages amounts to $2,533.00.
We detail our finding of loss of wages in this manner:
3 weeks reduction in pay $ 173.00
12 weeks loss of wages 1560.00
16 weeks reduction in pay 800.00
$2533.00
The trial judge allowed $4,500.00 for “injury; pain and suffering and residual disability.” In addition to the fractured navi-cular bone in his right wrist, plaintiff testified he was “skinned up and bruised up from being thrown on the pavement.”
Plaintiff was inducted into the U. S. Army on January 4, 1967, and discharged on April 28, 1967, because of disability to the right wrist. This disability was noted as restricted flexion of the right wrist.
Plaintiff has sought an increase in the award for injury, pain and suffering and residual disability. We find no proof of residual or permanent disability. The award of the trial court in this respect is fair and adequate under the proof. We find the award of $100 for expert witness fee adequate and it is taxed as cost.
For the foregoing reasons, the judgment appealed from is amended to allow $347.50 for medical expenses and $2,533.00 for loss of wages, thus awarding judgment in favor of plaintiff and against defendant, The Aetna Insurance Company, Frank Lovec-chio and United States Fidelity and Guaranty Company, jointly and in solido in the sum of $7,873.51 together with legal interest thereon from date of judicial demand until paid, and for all court costs, both in trial court and in this court.
Amended and as amended, affirmed.